UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-590-FDW

| | |
|---|---|
| SHERRAD DAVIDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| SERGEANT JANE DAVIS, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1); on Plaintiff's Motion to Compel Discovery, (Doc. No. 12); on Plaintiff's Motion to Appoint Counsel, (Doc. No. 13); and on Plaintiff's Motion for Default Judgment, (Doc. No. 14).

**I.     BACKGROUND**

In this action, brought pursuant to 42 U.S.C. § 1983, pro se Plaintiff Sherrad Davidson, a North Carolina state court inmate currently incarcerated at Lanesboro Correctional Institution in Polkton, North Carolina, brings claims against Defendants for excessive force and denial of medical care in violation of his constitutional right not to be subjected to cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution. Plaintiff also alleges state law tort claims for assault, battery, and negligence. In his Complaint, Plaintiff names as Defendants the following employees of Lanesboro Correctional Institution: Jane Davis, identified as a Sergeant with Lanesboro; John Lemon, identified as a Sergeant with Lanesboro; Jane Cole, identified as a Unit Manager of Lanesboro; Ken Beaver, identified as an Assistant

1

Superintendent for Custody at Lanesboro; Jack Clelland, identified as an Assistant Superintendent for Programs at Lanesboro; two Correctional Officers with Lanesboro, both having the name John Hinson; and Wendell Hargrave, identified as the Acting Correctional Administrator at Lanesboro. Plaintiff's action arises out of an incident that allegedly occurred at Lanesboro on July 5, 2013. Specifically, Plaintiff alleges that:

> On July 5, 2013, at about 4:30 pm, Sergeant Horne and Defendant Cole came to Plaintiff's cell door to address his requests for his medication for his diagnosis of schizophrenia, depression, hyper disorder and seizures. Defendant Cole told Plaintiff, "I'd rather give everybody else in here their medication before I even thought about giving you yours." Then she left. The plaintiff then began to set a fire. Shortly after these events, defendant Lemon accompanied by Defendants Hinson, Hinson, and Davis came to Plaintiff's cell to conduct an Emergency Cell Extraction. When Plaintiff's cell door was opened, he was knocked to the floor by the currents from the Electric Shock Shield where he was kicked, hit, and punched by Defendants Lemon, Hinson, and Hinson. During this assault one of the defendants stamped on plaintiff's left ankle, severely spraining it. Plaintiff made it out of the cell and was immediately surrounded by prison guards and placed in handcuffs. While Plaintiff was in handcuffs, Defendant Davis and Defendant Hinson began beating and striking Plaintiff with batons in the back of his head, neck, shoulders, and back. Plaintiff was carried from solitary confinement on Richmond Unit B-Block to the Nurse's Station on Anson Unit and he was slammed on his face on the concrete floor on the hallway outside the Nurse's Station. Plaintiff was the[n] picked up off the floor and taken inside the Nurse's Station where he was slapped on the left side of his face by defendant Davis' right hand. The plaintiff received lacerations to his face and numerous bruises and abrasions to his neck, shoulders, back, face, and head. Defendants Lemon, Davis, and Hinson are members of the Prison Emergency Response Team at Lanesboro. Defendants Lemon, Davis, and Hinson have repeatedly engaged in excessive force against inmates in the past. After the above-described assault, Plaintiff was placed in the Holding Cage on Anson Hospital and Lieutenant Hadley took pictures of Plaintiff's injuries. The Plaintiff was then taken to the emergency room of Anson Hospital, where his face was examined and he received three sutures for the lacerations on the right side of his face above his eye and his face on the right side had two broken bones that he was told would need surgery to repair. While the plaintiff was at Anson Hospital on July 5, 2013, the emergency room physician on duty told him, and wrote in an order that was to be sent back to the prison, that he would need surgery and he would need to see a Bone Specialist. On August 21, 2013, [Plaintiff] went to UNC Hospital to see a Bone Specialist. Plaintiff was told that it was too late to have surgery and it was going on six weeks, but surgery could still be done but it was up to DOC

2

(Department of Corrections). Defendant Clelland is responsible for arranging for specialized medical care outside of the prison. On October 7, 2013, Plaintiff went to the Main Medical to see a[n] Optometrist. Plaintiff's eyesight is 20/50 in his Right Eye and plaintiff was told his condition would worsen. Since August 21, 2013, the plaintiff has received no response from the medical department about surgery on his face. The plaintiff is in great pain. On information and belief, if the plaintiff is not given surgery promptly, he risks permanent disability. The actions of defendants Lemon, Davis, Hinson, and Hinson in using physical force against the plaintiff without need or provocation, or in failing to intervene to prevent the misuse of force, were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. The actions of defendants Lemon, Davis, Hinson, and Hinson in using physical force against the plaintiff without need or provocation constituted the tort of assault and battery under the law of North Carolina. The failure of Defendant Cole in failing to intervene to prevent the misuse of force was done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. The failure of defendant Beaver to take disciplinary or other action to curb the known pattern of physical abuse of inmates by defendants Lemon, Davis, and Hinson constituted deliberate indifference to the plaintiff's and other prisoners' safety and contributed to and proximately caused the above-described violation of Eighth Amendment rights and assault and battery. The failure of defendant Clelland to provide for the surgery and treatment of the broken bones in his face, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution. The failure of defendant Clelland to provide for the surgery and treatment of the broken bones in his face, constitutes the tort of negligence under the law of North Carolina.

(Doc. No. 1 at 6-7). Plaintiff seeks compensatory damages and injunctive relief. (Id. at 4-5).

## II.     STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

3

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

#### A. Initial Review of Plaintiff's Claims

As noted, Plaintiff contends that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by using excessive force against him on July 5, 2013. He also contends that Defendants were deliberately indifferent to his serious medical needs after the alleged assault took place. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, the Supreme Court has recently reiterated that "[a]n

4

inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 130 S.Ct. 1175, 1178-79 (2010). In Wilkins v. Gaddy, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 1178-79 (citations omitted).

Next, claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims

5

do not, without more, rise to the level of a cognizable § 1983 claim.  Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").  To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

Here, taking all of Plaintiff's factual allegations as true, and drawing all reasonable inferences in his favor, the Court finds that Plaintiff has stated Eighth Amendment claims as to the various Defendants for excessive force (Lemon, Hinson, Hinson, and Davis), failure to intervene (Cole), failure to discipline (Beaver), and deliberate indifference to serious medical needs (Clelland) sufficient to survive initial review.  Plaintiff has also sufficiently alleged state law claims of assault, battery, and negligence as to these various Defendants.

The Court specifically notes that, as to Defendant Beaver, Plaintiff's purported claim of failure to discipline against Defendant Beaver is based on his allegation that "[t]he failure of defendant Beaver to take disciplinary or other action to curb the known pattern of physical abuse of inmates by defendants Lemon, Davis, and Hinson constituted deliberate indifference to the plaintiff's and other prisoners' safety and contributed to and proximately caused the above-described violation of Eighth Amendment rights and assault and battery."  (Doc. No. 1 at 6-7). Plaintiff does not allege any specific instances demonstrating an alleged "known pattern of physical abuse of inmates by defendants Lemon, Davis, and Hinson."  Other courts have held that, absent specific allegations showing a pattern of excessive force that the defendant knew about, a plaintiff fails to state a claim based on failure to discipline.  See Dean v. Sacramento Cnty. No. 2:13cv730-JAM-KJN, 2014 WL 280975, at *5 (E.D. Cal. Jan. 23, 2014) (dismissing

Plaintiff's failure to discipline claim where "Plaintiffs' allegations boil[ed] down to a vague and undeveloped claim that Defendant County has a policy of deliberate indifference to widespread civil rights violations by its police force"); Niblack v. Murray, Civil Action No. 12-6910(MAS), 2013 WL 4432081, at *9 (D.N.J. Aug. 4, 2013) (where plaintiff failed to state a claim for failure to discipline where "[t]he Complaint fails to allege any facts regarding any particular instance where the supervisory Defendants failed to discipline police officers for prior misbehavior that would suggest a pattern of abuse or deliberate indifference"). This Court will, in an abundance of caution, allow Plaintiff's claim of failure to discipline to survive initial review, and Plaintiff's failure to discipline claim against Defendant Beaver will not be dismissed at this stage in the proceedings.

Next, Plaintiff's claim against Defendant Hargrave is based solely on Plaintiff's allegation that Defendant Hargrave "is the Acting Correctional Administrator I and is responsible for ensuring the safety and well-being of prisoners under his supervision." (Doc. No. 1 at 6). Plaintiff does not allege any personal involvement by Defendant Hargrave in committing the alleged constitutional violations and state law torts against Plaintiff. Defendant Hargrave cannot be held liable for the alleged acts of the other officers because liability under § 1983 cannot be based on respondeat superior. See Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978) (stating that under § 1983, liability is personal in nature, and the doctrine of respondeat superior does not apply). Thus, Plaintiff fails to state a claim against Defendant Hargrave.

**B. Plaintiff's Motion to Appoint Counsel**

Next, as for Plaintiff's motion to appoint counsel, Plaintiff alleges that the prison where he is incarcerated has no law library, that he has limited knowledge of the law, and that the issues are complex. See (Doc. No. 13). There is no absolute right to the appointment of counsel in

7

civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Notwithstanding Plaintiff's contentions to the contrary, Plaintiff has not shown exceptional circumstances justifying appointment of counsel at this time. Therefore, Plaintiff's motion to appoint counsel will be denied. If this action proceeds to trial, however, the Court will consider appointment of counsel to represent Plaintiff during the trial proceedings.

## IV. CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A, as to all Defendants except for Defendant Hargrave.[1]

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint, (Doc. No. 1), survives initial review under § 1915(e) and 28 U.S.C. § 1915A as to all named Defendants except Defendant Hargrave. Plaintiff's claim against Defendant Hargrave is dismissed.

2. Plaintiff's Motion to Appoint Counsel, (Doc. No. 13), is **DENIED**.

3. Plaintiff's Motion to Compel Discovery, (Doc. No. 12), and Plaintiff's Motion for Default Judgment, (Doc. No. 14), are **DENIED** as premature given that Defendants have not been served with process.

---

[1] Despite that Plaintiff's allegations survive initial review under § 1915(e), Defendants may still be entitled to pursue dismissal based on any applicable defenses.

4. The Clerk shall send Plaintiff summons forms to fill out so that service may be made on Defendants. Once the Court receives the summons, the U.S. Marshal shall effectuate service on Defendants at the addresses provided by Plaintiff.

Signed: June 12, 2014

Frank D. Whitney
Chief United States District Judge