# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:13-cv-590-FDW

| | |
|---|---|
| SHERRAD DAVIDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| SERGEANT JANE DAVIS, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on a Motion to Dismiss filed by Defendant Ken Beaver. (Doc. No. 24).

## I.  BACKGROUND

On October 23, 2013, pro se Plaintiff Sherrad Davidson, a North Carolina state court inmate currently incarcerated at Lanesboro Correctional Institution in Polkton, North Carolina, filed this action, pursuant to 42 U.S.C. § 1983, purporting to bring claims against Defendants for excessive force and denial of medical care in violation of his constitutional right not to be subjected to cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution.  Plaintiff also alleges state law tort claims for assault, battery, and negligence against various Defendants.  Plaintiff named as Defendants the following employees of Lanesboro Correctional Institution: Jane Davis, identified as a Sergeant with Lanesboro; John Lemon, identified as a Sergeant with Lanesboro; Jane Cole, identified as a Unit Manager of Lanesboro; Ken Beaver, identified as an Assistant Superintendent for Custody at Lanesboro; Jack Clelland, identified as an Assistant Superintendent for Programs at Lanesboro; two

-1-

Correctional Officers with Lanesboro, both identified as having the name John Hinson[1]; and Wendell Hargrave, identified as the Acting Correctional Administrator at Lanesboro. Plaintiff's action arises out of an incident that allegedly occurred at Lanesboro on July 5, 2013. Plaintiff alleged in the Complaint that:

> On July 5, 2013, at about 4:30 pm, Sergeant Horne and Defendant Cole came to Plaintiff's cell door to address his requests for his medication for his diagnosis of schizophrenia, depression, hyper disorder and seizures. Defendant Cole told Plaintiff, "I'd rather give everybody else in here their medication before I even thought about giving you yours." Then she left. The plaintiff then began to set a fire. Shortly after these events, defendant Lemon accompanied by Defendants Hinson, Hinson, and Davis came to Plaintiff's cell to conduct an Emergency Cell Extraction. When Plaintiff's cell door was opened, he was knocked to the floor by the currents from the Electric Shock Shield where he was kicked, hit, and punched by Defendants Lemon, Hinson, and Hinson. During this assault one of the defendants stamped on plaintiff's left ankle, severely spraining it. Plaintiff made it out of the cell and was immediately surrounded by prison guards and placed in handcuffs. While Plaintiff was in handcuffs, Defendant Davis and Defendant Hinson began beating and striking Plaintiff with batons in the back of his head, neck, shoulders, and back. Plaintiff was carried from solitary confinement on Richmond Unit B-Block to the Nurse's Station on Anson Unit and he was slammed on his face on the concrete floor on the hallway outside the Nurse's Station. Plaintiff was the[n] picked up off the floor and taken inside the Nurse's Station where he was slapped on the left side of his face by defendant Davis' right hand. The plaintiff received lacerations to his face and numerous bruises and abrasions to his neck, shoulders, back, face, and head. Defendants Lemon, Davis, and Hinson are members of the Prison Emergency Response Team at Lanesboro. Defendants Lemon, Davis, and Hinson have repeatedly engaged in excessive force against inmates in the past. After the above-described assault, Plaintiff was placed in the Holding Cage on Anson Hospital and Lieutenant Hadley took pictures of Plaintiff's injuries. The Plaintiff was then taken to the emergency room of Anson Hospital, where his face was examined and he received three sutures for the lacerations on the right side of his face above his eye and his face on the right side had two broken bones that he was told would need surgery to repair. While the plaintiff was at Anson Hospital on July 5, 2013, the emergency room physician on duty told him, and wrote in an order that was to be sent back to the prison, that he would need surgery and he would need to see a Bone Specialist. On August 21, 2013, [Plaintiff] went to UNC Hospital to see a Bone Specialist. Plaintiff was told that it was too late to have surgery and it was

---

[1] As the Court discusses, <u>infra</u>, one of these officers has filed an Answer, in which he states that his name is Kearry Hinson.

> going on six weeks, but surgery could still be done but it was up to DOC
> (Department of Corrections). Defendant Clelland is responsible for arranging for
> specialized medical care outside of the prison. On October 7, 2013, Plaintiff went
> to the Main Medical to see a[n] Optometrist. Plaintiff's eyesight is 20/50 in his
> Right Eye and plaintiff was told his condition would worsen. Since August 21,
> 2013, the plaintiff has received no response from the medical department about
> surgery on his face. The plaintiff is in great pain. On information and belief, if
> the plaintiff is not given surgery promptly, he risks permanent disability. The
> actions of defendants Lemon, Davis, Hinson, and Hinson in using physical force
> against the plaintiff without need or provocation, or in failing to intervene to
> prevent the misuse of force, were done maliciously and sadistically and
> constituted cruel and unusual punishment in violation of the Eighth Amendment
> of the United States Constitution. The actions of defendants Lemon, Davis,
> Hinson, and Hinson in using physical force against the plaintiff without need or
> provocation constituted the tort of assault and battery under the law of North
> Carolina. The failure of Defendant Cole in failing to intervene to prevent the
> misuse of force was done maliciously and sadistically and constituted cruel and
> unusual punishment in violation of the Eighth Amendment of the United States
> Constitution. <u>The failure of defendant Beaver to take disciplinary or other action
> to curb the known pattern of physical abuse of inmates by defendants Lemon,
> Davis, and Hinson constituted deliberate indifference to the plaintiff's and other
> prisoners' safety and contributed to and proximately caused the above-described
> violation of Eighth Amendment rights and assault and battery</u>. The failure of
> defendant Clelland to provide for the surgery and treatment of the broken bones in
> his face, constitutes deliberate indifference to the plaintiff's serious medical needs
> in violation of the Eighth Amendment to the United States Constitution. The
> failure of defendant Clelland to provide for the surgery and treatment of the
> broken bones in his face, constitutes the tort of negligence under the law of North
> Carolina.

(Doc. No. 1 at 6-7) (emphasis added).

On June 13, 2014, the Court found that the action survived initial review as to all Defendants except for Defendant Hargrave. (Doc. No. 15). On June 20, 2014, summonses were issued to the U.S. Marshal for service on Defendants Beaver, Cole, Davis, Lemon, and the two correctional officers both named John Hinson. (Doc. No. 16). On September 30, 2014, Defendant Beaver filed the pending motion to dismiss based on failure to state a claim, based on failure to exhaust administrative remedies, and based on public official immunity and qualified immunity. (Doc. No. 24). On the same day, Kearry Hinson filed an Answer, stating that

Defendant had incorrectly identified him as John Hinson. (Doc. No. 23 at 1 n.2). On October 7, 2014, the Court entered an order granting Plaintiff fourteen days in which to respond to the motion to dismiss. (Doc. No. 26). On November 26, 2014, Plaintiff filed a motion for extension of time in which to respond to the motion to dismiss. (Doc. No. 27). The Court granted the motion for extension of time on December 4, 2014, giving Plaintiff thirty days from service of the order in which to respond. (Doc. No. 28). Plaintiff did not respond to the motion to dismiss.

On February 13, 2015, Plaintiff issued another order to Plaintiff, again giving Plaintiff fourteen days in which to respond to the motion to dismiss. (Doc. No. 33). The Court specifically encouraged Plaintiff to address Defendant Beaver's exhaustion argument. The Court also noted in the Order that summonses have been returned as unexecuted as to Defendants Cole, Davis, and Lemon. See (Doc. Nos. 30; 31; 32). The Court also observed that Plaintiff never returned a summons to the Clerk for service on Defendant Clelland.[2] See (Doc. No. 16). The Court stated that Plaintiff had fourteen days in which to submit a memorandum to the Court explaining why these additional Defendants should not be dismissed based on failure to effectuate service on them. The Court explicitly warned Plaintiff that failure to respond could lead to dismissal of these Defendants without further notice. Plaintiff has not responded to the Court's order.

## II. DISCUSSION

### A. Defendant Beaver's Motion to Dismiss

Plaintiff's claim against the moving Defendant Beaver is solely based on Beaver's alleged failure to supervise the named Defendants who allegedly used excessive force against

---

[2] The Court inadvertently referred to Clelland as "Melland," which is how Defendant's name is designated on the docket report.

Plaintiff. Specifically, Plaintiff alleges in the Complaint that "[t]he failure of defendant Beaver to take disciplinary or other action to curb the known pattern of physical abuse of inmates by defendants Lemon, Davis, and Hinson constituted deliberate indifference to the plaintiff's and other prisoners' safety and contributed to and proximately caused the above-described violation of Eighth Amendment rights and assault and battery." (Doc. No. 1 at 6-7). As noted, Defendant Beaver has filed a motion to dismiss based on failure to state a claim, based on failure to exhaust administrative remedies, and based on public official immunity and qualified immunity.[3] Because exhaustion of administrative remedies is a prerequisite to filing suit in the first instance, the Court first addresses Beaver's exhaustion argument.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that under the PLRA, exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id.

In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that the PLRA

---

[3] The Court notes that, to the extent Defendant Beaver's motion to dismiss is based on failure to state a claim, the Court has already determined that the action survives initial review under 28 U.S.C. § 1915(e). The standard for failure to state a claim under Section 1915(e) is the same as that under Rule 12(b)(6). De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003). Thus, the Court has essentially already found that Plaintiff has satisfied his burden under Rule 12(b)(6).

exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524).

Plaintiff alleges in his Complaint that he has exhausted his administrative remedies and he states that he filed a grievance on July 8, 2013, based on "being assaulted by Correctional Staff while in handcuffs." (Doc. No. 1 at 2). Defendant Beaver has attached to the motion to dismiss the grievance filed by Plaintiff on July 8, 2013. See (Doc. No. 25-3 at 3: Def.'s Ex. A). In the grievance, Plaintiff complained that on July 5, 2013, he was "brutally assaulted" by several of the Defendants while he was in handcuffs. (Id.). In support of the motion to dismiss, Defendant Beaver contends that Plaintiff did not exhaust his administrative remedies as to Beaver because the grievance does not name Beaver, does not allege that Defendant Beaver inappropriately handled any discipline, and does not allege that there was a pattern of abuse that Defendant Beaver should have known about. See (Doc. No. 25 at 7).

An inmate's failure to identify by name during the grievance process each individual defendant he later sues in federal court no longer mandates dismissal pursuant to § 1997e(a). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court held that such an omission is not fatal to a plaintiff's entire case. The Jones Court stated that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." (Id. at 219) (emphasis in original). The Jones Court noted that the PLRA itself does not impose such a requirement, and

the parties must look to what the prison grievance process itself requires. The Court observed that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at 218. Nevertheless, one of the main purposes of a prison grievance system is to allow administrators a fair opportunity to address the problem that will later form the basis of suit. Id. at 219. See Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008) (where the plaintiff's grievances concerning his medical care for pancreatic illness and Hepatitis C did not alert prison officials to his additional gout problem, stating that allowing the plaintiff "to bring suit for alleged inadequate treatment of his gout would not serve the purposes behind the exhaustion requirement" and, thus, affirming dismissal based on exhaustion as to the gout claim). Thus, regardless of whether a particular defendant is named in a grievance, if the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will later form the basis of the suit against that defendant, dismissal of that defendant is appropriate. See Johnson v. Johnson, 385 F.3d 503, 516-17 (5th Cir. 2004).

The North Carolina Department of Public Safety does not require a plaintiff to name each defendant in his grievances. See Moore v. Jones, 517 F.3d 717, 726 (2008). Rather, the state's administrative remedy procedure requires a prisoner to submit a "Grievance Statement" and the desired remedy on a Form DC-410. See NCDPS ARP § .0310(a); Moore, 517 F.3d at 725. Nevertheless, the Court finds that, although the NCDPS administrative remedy procedure does not require a plaintiff to name each defendant in his grievances, Defendant Beaver is still entitled to be dismissed from this action based on Plaintiff's failure to exhaust his claim against Beaver. This is because the allegations in Plaintiff's grievance simply did not put prison officials on fair

notice that Plaintiff was complaining about any conduct by Beaver. To be sure, the grievance gave prison authorities fair notice of, and the opportunity to address, the alleged use of excessive force by Defendants Lemon, Davis, John Hinson, and Kearry Hinson. Indeed, prison officials specifically addressed the excessive force claim in their response to Plaintiff's grievance. Based on the allegations in the grievance, however, prison officials had no reason whatsoever to believe that Plaintiff was alleging that Defendants Lemon, Davis, John Hinson, and Kearry Hinson had engaged in a pattern or practice of using excessive force against inmates, and that Defendant Beaver or any other supervisors at the prison knew or should have known about it. Rather, Plaintiff merely complained in the grievance about a single, isolated incident of alleged excessive force by Defendants Lemon, Davis, John Hinson, and Kearry Hinson. Thus, nothing in the grievance gave prison officials notice and the opportunity to address Plaintiff's failure to supervise claim against Beaver before Plaintiff brought this action. If this Court were to conclude that a prisoner's mere allegation of one isolated incident of excessive force was enough to exhaust a failure-to-supervise claim against the prison's supervisors, this Court would be acting against the clear purpose of the PLRA exhaustion requirement. That is, the Court would be addressing the failure-to-supervise claim before prison officials were first put on notice of it and given the opportunity to address it. Finally, the Court observes that Plaintiff has wholly failed to even respond to the motion to dismiss, despite that he received an extension of time from the Court to do so. Moreover, in an abundance of caution, by Order dated February 13, 2015, the Court specifically granted Plaintiff an additional fourteen days to respond to the motion to dismiss, and specifically, to Defendant Beaver's exhaustion argument. Again, Plaintiff has wholly failed to respond. In sum, the Court will grant Defendant Beaver's motion to dismiss without prejudice for failure to exhaust administrative remedies.

### B. The Remaining Defendants

Finally, the Court observes that the following Defendants remain in this lawsuit: (1) Lanesboro correctional officer identified by Plaintiff as John Hinson; (2) a second Lanesboro correctional officer also identified by Plaintiff as John Hinson, but who has submitted an Answer in this action stating that his name is Kearry Hinson; (3) Defendant Cole; (4) Defendant Davis; and (5) Defendant Lemon. The Court has also observed in a prior Order that summonses have been returned as unexecuted as to Defendants Cole, Davis, and Lemon. See (Doc. Nos. 30; 31; 32). The Court also observed that Plaintiff never returned a summons to the Clerk for service on Defendant Clelland.[4] See (Doc. No. 16). The Court observes here that, although Plaintiff submitted a summons form identifying two separate "John Hinsons" to be served, only one summons has been returned and executed as to one of these officers, and he states that his name is Kearry Hinson.

Federal Rule of Civil Procedure 4(c) states that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Plaintiff has not served a summons and complaint on five Defendants in this action within 120 days after filing of the Complaint, as required by Rule 4 of the Federal Rule of Civil Procedure. The Court

---

[4] The Court inadvertently referred to Clelland as "Melland," which is how Defendant's name is designated on the docket report.

will require Plaintiff to submit an explanation to the Court showing cause as to why this action should not be dismissed as to Defendants John Hinson, Cole, Davis, Lemon, and Clelland for failure to serve them within the time required by Rule 4(m).

### III. CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss is granted, and Plaintiff's claim against Defendant Beaver is dismissed without prejudice for failure to exhaust administrative remedies.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Beaver's Motion to Dismiss, (Doc. No. 24), is **GRANTED**, and Plaintiff's claim against Defendant Beaver is dismissed without prejudice for failure to exhaust administrative remedies.

2. Plaintiff shall have fourteen days in which to submit a memorandum to this Court explaining why this action should not be dismissed as to Defendants John Hinson, Cole, Davis, Lemon, and Clelland for failure to serve them within the time required by Rule 4(m). Failure to respond <u>will</u> result in Plaintiff's claims being dismissed as to these Defendants without prejudice and without further notice to Plaintiff.

Signed: March 5, 2015

Frank D. Whitney
Chief United States District Judge