# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:13-cv-590-FDW

| | |
|---|---|
| SHERROD DAVIDSON, | ) |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| SERGEANT JANE DAVIS, et al., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Kearry Hinson, (Doc. No. 37), and on a Motion for Protective Order by Defendant Hinson, (Doc. No. 52).

## I. BACKGROUND

### A. Procedural Background

Pro se Plaintiff Sherrod Davidson, a North Carolina state court inmate currently incarcerated at Lanesboro Correctional Institution in Polkton, North Carolina, filed this action on October 23, 2013, pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff named eight individuals as Defendants, alleging claims of excessive force and deliberate indifference to serious medical needs, in violation of his Eighth Amendment right not to be subjected to cruel and unusual punishment. Plaintiff also alleged state law tort claims for assault, battery, and negligence. The Court has since dismissed all claims against all Defendants, except for Plaintiff's excessive force claim and the state law claims for assault and battery against

1

Defendant Kearry Hinson.[1]  See (Doc. Nos. 34; 35).

On November 6, 2015, Defendant Kearry Hinson filed the pending summary judgment motion. (Doc. No. 37). On November 12, 2015, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 45). Plaintiff did not respond to the summary judgment motion.[2] Instead, he filed a motion to stay the case, well after the discovery period was over, contending that he needed more time to conduct discovery. (Doc. No. 48). The Court denied his motion to stay on December 10, 2015. (Doc. No. 51).

B. Factual Background

1. The Alleged Excessive Force Incident and the Summary Judgment Evidence

a. Plaintiff's Allegations

Plaintiff's action arises out of an incident that occurred at Lanesboro on July 5, 2013, after Plaintiff intentionally set a fire in his cell. Specifically, Plaintiff alleges in the Complaint that:

> On July 5, 2013, at about 4:30 pm, Sergeant Horne and Defendant Cole came to Plaintiff's cell door to address his requests for his medication for his diagnosis of schizophrenia, depression, hyper disorder and seizures. Defendant Cole told Plaintiff, "I'd rather give everybody else in here their medication before I even thought about giving you yours." Then she left. The plaintiff then began to set a fire. Shortly after these events, defendant Lemon accompanied by Defendants Hinson, Hinson, and Davis came to Plaintiff's cell to conduct an Emergency Cell Extraction. When Plaintiff's cell door was opened, he was knocked to the floor by the currents from the Electric Shock Shield where he was

---

[1] Plaintiff's Complaint indicates that he has sued Defendant Hinson in his individual capacity only. (Doc. No. 1 at 5).
[2] Because Plaintiff did not file a response to the summary judgment motion, he is deemed to have abandoned his claims. See Crosby v. Gastonia, 635 F.3d 634, 638 n.3 (4th Cir. 2011). In an abundance of caution, however, the Court will address the merits of Plaintiff's claims.

kicked, hit, and punched by Defendants Lemon, Hinson, and Hinson. During this assault one of the defendants stamped on plaintiff's left ankle, severely spraining it. Plaintiff made it out of the cell and was immediately surrounded by prison guards and placed in handcuffs. While Plaintiff was in handcuffs, Defendant Davis and Defendant Hinson began beating and striking Plaintiff with batons in the back of his head, neck, shoulders, and back. Plaintiff was carried from solitary confinement on Richmond Unit B-Block to the Nurse's Station on Anson Unit and he was slammed on his face on the concrete floor on the hallway outside the Nurse's Station. Plaintiff was the[n] picked up off the floor and taken inside the Nurse's Station where he was slapped on the left side of his face by defendant Davis' right hand. The plaintiff received lacerations to his face and numerous bruises and abrasions to his neck, shoulders, back, face, and head. Defendants Lemon, Davis, and Hinson are members of the Prison Emergency Response Team at Lanesboro. Defendants Lemon, Davis, and Hinson have repeatedly engaged in excessive force against inmates in the past. After the above-described assault, Plaintiff was placed in the Holding Cage on Anson Hospital and Lieutenant Hadley took pictures of Plaintiff's injuries. The Plaintiff was then taken to the emergency room of Anson Hospital, where his face was examined and he received three sutures for the lacerations on the right side of his face above his eye and his face on the right side had two broken bones that he was told would need surgery to repair. While the plaintiff was at Anson Hospital on July 5, 2013, the emergency room physician on duty told him, and wrote in an order that was to be sent back to the prison, that he would need surgery and he would need to see a Bone Specialist. On August 21, 2013, [Plaintiff] went to UNC Hospital to see a Bone Specialist. Plaintiff was told that it was too late to have surgery and it was going on six weeks, but surgery could still be done but it was up to DOC (Department of Corrections). Defendant Clelland is responsible for arranging for specialized medical care outside of the prison. On October 7, 2013, Plaintiff went to the Main Medical to see a[n] Optometrist. Plaintiff's eyesight is 20/50 in his Right Eye and plaintiff was told his condition would worsen. Since August 21, 2013, the plaintiff has received no response from the medical department about surgery on his face. The plaintiff is in great pain. On information and belief, if the plaintiff is not given surgery promptly, he risks permanent disability. The actions of defendants Lemon, Davis, Hinson, and Hinson in using physical force against the plaintiff without need or provocation, or in failing to intervene to prevent the misuse of force, were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. The actions of defendants Lemon, Davis, Hinson, and Hinson in using physical force against the plaintiff without need or provocation constituted the tort of assault and battery under the law of North Carolina. The failure of Defendant Cole in failing to intervene to prevent the misuse of force was done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. The failure of defendant Beaver to take disciplinary or other action to curb the known pattern of physical abuse of inmates by defendants Lemon,

3

Davis, and Hinson constituted deliberate indifference to the plaintiff's and other prisoners' safety and contributed to and proximately caused the above-described violation of Eighth Amendment rights and assault and battery. The failure of defendant Clelland to provide for the surgery and treatment of the broken bones in his face, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution. The failure of defendant Clelland to provide for the surgery and treatment of the broken bones in his face, constitutes the tort of negligence under the law of North Carolina.

(Doc. No. 1 at 6-7). Plaintiff seeks compensatory damages and injunctive relief. (<u>Id.</u> at 4-5).

    b.    <u>Defendant's Summary Judgment Materials</u>

In support of the summary judgment motion, Defendant has submitted the affidavits of Lisa Martin and Barbara Horne, who conducted two separate investigations of the incident--one for the force used and one related to the fire itself; the affidavit of Natalie Mills, the disciplinary investigator into Plaintiff's actions during the incident; the affidavit of Defendant Hinson outlining his actions during the incident; the affidavit of Felicia Wall, an officer involved in the incident; and the affidavit of Ken Beaver, Lanesboro Assistant Superintendent. <u>See</u> (Doc. Nos. 38; 39; 40; 41; 42; 43). Attached to the affidavits are incident reports, the relevant policies for the North Carolina Department of Public Safety and Lanesboro Correctional Institution where the event occurred, Plaintiff's offender history, and documents relating to the disciplinary action against Plaintiff after the incident. <u>See</u> (<u>Id.</u>). Defendant has also submitted a video of footage taken during and after the incident. (Doc. No. 38-4).

The affidavits show that Plaintiff was a difficult inmate, with a history of assaultive behavior, and a history of behaviors that threatened the safety of the facility, including setting fires. <u>See</u> (Doc. No. 39-2: Ex. B to Hinson Aff.). Furthermore, Plaintiff's custody status at the time of the incident indicated his inability to conform to requirements of prison conduct rules for

inmates. (Doc. No. 43 at ¶ 8: Wall Aff.). He was housed on a block with inmates on a similar control status. (Id.). He had recently assaulted another person in the prison and threatened staff, as evidenced by the "box" placed on his cell wicket door. See (Doc. No. 39 at ¶¶ 8; 13: Hinson Aff.; Doc. No. 43 at ¶ 13: Wall Aff.).

On July 5, 2013, the day of the incident, Plaintiff set a fire in his cell. See (Doc. No. Doc. No. 39 at ¶ 9). Defendant Hinson was part of the team that extracted Plaintiff from his cell. (Id.). When Hinson arrived, a large amount of smoke was billowing out of Plaintiff's cell. (Id. at ¶ 11). Prison officers opened Plaintiff's cell door and, using a protective shield, Sergeant Lemon led Hinson and other guards into Plaintiff's cell. (Id.). Because the smoke was so thick, it was difficult to see where Plaintiff was in his cell. (Id.). As Lemon entered the cell, Plaintiff punched Lemon in the left jaw with his right hand. (Id.; Doc. No. 43 at ¶ 11). The smoke was in the cell was heavy, and the officers were not able to assess whether Plaintiff had a weapon. (Id.).

While Plaintiff was still in the cell, Sergeant Lemon was able to place him on the floor. (Doc. No. 39 at ¶ 12). Officers are trained to place the inmate on the flattest surface (in this case, the floor), to secure them. See (Id.). Defendant Hinson was at the entrance of the cell and near Plaintiff's leg when Plaintiff was placed on the floor. (Id.). Defendant Hinson pulled on Plaintiff's leg to assist in getting him out of the cell and away from the fire. See (Id.).

Once outside the cell, the remaining correctional staff was able to take control through hands-on force and place Plaintiff in restraints. (Id.; Doc. No. 43 at ¶ 12; Doc. No. 38 at ¶ 15). Officers began to carry Plaintiff to medical. Plaintiff continued to resist while the officers carried him to medical. (Doc. No. 43 at ¶ 12). When the officers arrived with Plaintiff at medical, the officers lost their grip because of Plaintiff's combativeness, and Plaintiff fell to the

5

floor. (Id.). Plaintiff was ultimately sent to the emergency department and treated for injuries, which included a crushed eye socket and blunt head trauma, requiring stitches to the right eyebrow area. (Doc. No. 41-2 at 7).

The video footage of the incident corroborates the officers' descriptions of the incident as stated in their affidavits. The video shows the outside of Plaintiff's cell as he was being removed, as well as officers carrying Plaintiff to medical and, a little later, taking Plaintiff to a holding cell. The video shows the officers, including Defendant Hinson, enter the cell at 5:22:03. The video shows the guards carrying Plaintiff out of the cell twenty-five seconds later, at 5:22:28. See (Doc. No. 38 at ¶ 15; Doc. No. 39 at ¶ 14). Since there was no video camera in Plaintiff's cell, the video does not show the twenty-five seconds when the officers were inside Plaintiff's cell. The video shows officers securing Plaintiff on the floor outside of the cell briefly, before picking him up to carry him to medical. During the walk to medical, officers can be seen struggling to carry Plaintiff through the hallway, and he appears to be moving his legs and trying to escape from their grip.

Defendant Hinson assisted in securing Plaintiff in Plaintiff's cell and just outside of it, but he did not assist with transporting him out of the cell block to the nurses' station, nor was he involved when Plaintiff was dropped during the transport. See (Doc. No. 38 at ¶¶ 15-16; Doc. No. 39 at ¶ 15). One portion of the video shows Defendant Hinson accompanying Plaintiff when he was transported from the nurses' station to the holding cell, but Hinson was not part of the hands-on transport team. See (Doc. No. 38 at ¶¶ 16-17; Doc. No. 39 at ¶ 15).

In the video, no one is seen punching, hitting, kicking, or biting Plaintiff, nor is anyone hitting Plaintiff with batons. Moreover, Defendant Hinson—the only remaining Defendant in this action—states in his affidavit that he did not intentionally kick, bite, or punch Plaintiff, as

6

Plaintiff alleged in the Complaint, nor did he intentionally stomp on Plaintiff's left ankle. (Doc. No. 39 at ¶¶ 16; 17). He also denies using batons to beat Plaintiff. See (Id.).

The incident was ultimately investigated pursuant to three separate investigations--two internal investigations and one disciplinary investigation. Investigators Horne and Martin, who conducted the internal investigations, determined that the force used was appropriate—a decision supported by Assistant Superintendent Ken Beaver. See (Doc. No. 40 at ¶¶ 11-13; Doc. No. 41 at ¶¶ 11-12; Doc. No. 38 at ¶ 18). Additionally, pursuant to the disciplinary investigation, Plaintiff ultimately pled guilty to the charges resulting from his actions in setting the fire in his cell. See (Doc. No. 42 at ¶ 8: Mills Aff.; Doc. No. 42-1: Ex. A to Mills Aff.).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the

non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

## III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the

relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21.  Furthermore, although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim.  See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

The Court finds that Defendant Hinson is entitled to summary judgment on Plaintiff's claim against him for excessive force.  Defendant Hinson's evidence on summary judgment, which Plaintiff has not disputed, shows that the force used by Defendant Hinson and the other officers was applied in a good-faith effort to restore order and discipline, and it was not done maliciously and sadistically for the very purpose of causing harm.  The officers were facing a situation in which an inmate, already known to be violent, had set a fire in his cell.  Defendant's evidence on summary judgment shows that the cell was filled with smoke when the officers entered it, and Plaintiff immediately started attacking them.  The officers were able to extract Plaintiff within twenty-five seconds after getting him to the floor.  The officers were entitled to use the force necessary to get Plaintiff under control and extract Plaintiff safely from his cell. The most that Defendant Hinson played in that role was to pull Plaintiff out of his cell by his leg, as Plaintiff continued to physically resist the officers.  Plaintiff alleged in the Complaint that Defendant Hinson and other officers repeatedly beat him with batons in the hallway outside the nurses' station.  He has produced no admissible evidence on summary judgment, however, to rebut Defendant's own evidence attesting that no such thing occurred.  Moreover, the video plainly shows this simply did not happen.  In any event, Defendant Hinson—the only remaining Defendant in this action—was not even involved in transporting Plaintiff to the nurses' station.

9

In sum, the Court finds that Plaintiff has not raised a genuine dispute as to whether Defendant Hinson—the sole remaining Defendant in this action—used excessive force against Plaintiff. Thus, Defendant Hinson is entitled to summary judgment on Plaintiff's excessive force claim.[3] Finally, as to Plaintiff's remaining state law claims against Defendant Hinson for assault and battery, the Court will decline to assert supplemental jurisdiction over these state law claims, and they will, therefore, be dismissed without prejudice. See 28 U.S.C. § 1367(c)(3).

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Kearry Hinson's Motion for Summary Judgment, (Doc. No. 37), is **GRANTED**.

2. Defendant Kearry Hinson's Motion for Protective Order, (Doc. No. 52), is **DISMISSED** as moot.

3. Plaintiff's claim of excessive force against Defendant Hinson is dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims are therefore dismissed without prejudice.

4. The Clerk is directed to terminate this action.

Frank D. Whitney
Chief United States District Judge

---

[3] Defendant raised qualified immunity as a defense to Plaintiff's excessive force claim. Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendant is entitled to qualified immunity.